Woodruff
v.
Richardson.

# WOODRUFF *against* RICHARDSON.

In a motion in arrest of judgment, for misconduct of a juror during the trial, —as conversing with one not of the jury upon the merits of the cause,—it must be averred, that the party making the motion, was ignorant of such misconduct until after the verdict was rendered; otherwise the motion will not prevail.

In an action of slander for making a positive charge of theft against the plaintiff, the defendant cannot justify the charge, by proving that the defendant had just ground for believing the plaintiff to be a very dishonest man.

Where the jury, in an action of slander, charging the plaintiff with theft, swindling, cheating, &c. rendered, at first, a verdict for the plaintiff, with 1100 dollars damages ; from which the judge dissented, and after expressing his own views and urging reasons against so large an amount of damages, returned them to a second consideration, the result of which was a verdict for 800 dollars damages ; it was held, that a new trial would not be granted for excessiveness of damages [ Two judges dissenting, on the ground that the conduct of the plaintiff had been such as to preclude him from recovering any thing more than nominal damages ]

THIS was an action of slander, for charging the plaintiff with dishonesty, at different times, and in various forms of speech, which were set forth in eleven counts of the declaration. The words stated in the first count were—" He (the plaintiff.) is a damned thief. He has robbed me of more than a thousand dollars ; and he is a damned robber." The words stated in the second count, alleged to have been addressed to *Hiram Woodruff,* father of the plaintiff, were—" I am going to see a lawyer, to have your son (the plaintiff,) arrested and put in jail, for swindling me out of my property. He has swindled me out of two thousand dollars. He has made one thousand dollars a year in the business, (in partnership with the defendant,) and put the money in his own pocket. I will make a public prosecution of it ; and it will kill him." The words set forth in the third count, were—" I have lost two thousand dollars, by his rascality. The damned rascal has sunk two thousand dollars for me." Those stated in another count, were—" I have been to *Westville,* and found, that he has been dishonest there with his employers ; and that he has taken money from their drawer, and put it into his own pocket." According to the allegation in the other counts, the words were varied in the form of expression, but were substantially of the same import.

The defendant pleaded the general issue, with notice that he should give in evidence matter justifying the charge.

The cause was tried at *Hartford*, *January* term, 1850; and the jury returned a verdict for the plaintiff to recover eight hundred dollars damages.

The defendant moved in arrest of judgment, alleging that *William Bigelow*, one of the jurors empannelled to try the cause, during the trial, conversed with *Aner Sperry*, who was not one of the jury, and said to him, "We (the jury) have got a tough case. It is the strangest that ever was in the world: people will come right into the court-house, and stand up, and lie before the public, and make it out of whole cloth. The case is all on one side, and no two ways about it:" meaning that the witnesses called by the defendant had testified falsely, and that the case was all on one side in favour of the plaintiff. This juror afterwards united with his fellows in rendering the verdict against the defendant. The court found the matters stated in this motion in arrest to be true; but of which of the parties, or which side, or of whose witnesses, the juror used this language, the court did not find, beyond what is implied from such language, and the verdict rendered, and the fact that the defendant's witnesses were then under examination. The court also found, (what was not averred in the motion in arrest,) that the defendant had no knowledge whatever of said language or conduct of the juror, until after the verdict was rendered.

The defendant moved for a new trial, because the verdict was against the evidence in the cause, and because the damages were excessive. The question as to the sufficiency of the motion in arrest, and of the matters therein alleged and found as a ground of arrest, as well as the questions arising on the motion for a new trial, were reserved for the advice of this court.

The evidence on both sides was detailed in the motion; but it is too voluminous to be inserted here; and perhaps it is not necessary for a right understanding of the points decided, that it should be. The testimony of the plaintiff's witnesses as to the speaking of the words—substantially at least—was full and explicit; and the defence, either as a justification or in mitigation of damages, was the ground principally contested.

*Hartford,*
*August, 1850.*

*Woodruff*
*v.*
*Richardson.*

*Toucey* and *T. C. Perkins*, in support of the motions, contended, 1. That the motion in arrest ought to prevail. In the first place, the juror's misconduct, if properly shown, is sufficient to set aside the verdict. He violated his oath; spoke to one not of the jury about the merits of the cause; avowed a predetermined opinion against one of the parties; and that party was manifestly the defendant. His witnesses were then under examination, and were evidently referred to, by the juror. Did he charge the plaintiff's witnesses with lying, and scout all his proof, and then give a heavy verdict in his favour? Secondly, the motion in arrest is sufficient. An exception for misconduct in a juror, during the trial, or afterwards before verdict, is not presumed to be waived; because the party has had no opportunity to take advantage of it. Hence, it is not necessary to allege, that the ground of exception was not known.

2. That the verdict was against the evidence in the cause. [Here the evidence was minutely examined.]

3. That the damages were excessive.

*Chapman* and *Blackman*, contra, contended, 1. That the motion in arrest, ought not to prevail. In the first place, from the facts stated in the motion, the court cannot see, that the alleged misconduct of the juror had, or might have had, an effect unfavourable to the party moving in arrest; and therefore, it will not grant the motion. *Pettibone* & al. v. *Phelps* & al. 13 *Conn. R.* 445. 450. Secondly, the alleged misconduct of the juror was not occasioned by the prevailing party, or any one in his behalf. *Pettibone* & al. v. *Phelps* & al. 13 *Conn. R.* 451. *Bishop* v. *Williams*, 2 *Fairf. R.* 495. Thirdly, the motion is insufficient, for want of an allegation that the alleged misconduct of the juror was before the trial closed. *Pettibone* & al. v. *Phelps* & al. 13 *Conn. R.* 442. *Selleck* v. *Sugar Hollow Turnpike Company*, 13 *Conn. R.* 459.

2. That a new trial will not be granted for a verdict against evidence, unless it appears that the verdict was very clearly and palpably against the evidence in the cause. *Stat.* 90. *ch.* 13. § 155. *Bacon* v. *Parker*, 12 *Conn. R.* 213. *Palmer* v. *Hyde*, 4 *Conn. R.* 426. *Lafflin* & al. v. *Pomeroy*, 11 *Conn. R.* 440. *Bulkley* v. *Waterman*, 13 *Conn. R.* 328.

Here the court cannot see, from the evidence disclosed, that a new trial would change the result.

<div style="float:right">*Hartford,*<br>August, 1850.<br><br>Woodruff<br>*v.*<br>Richardson.</div>

3. That where the evidence in a cause is contradictory, and its effects depend upon the credibility of the witnesses, and the probability of the facts narrated by them, the verdict will not be set aside as against evidence, although the preponderance, in the opinion of the court, is against the verdict. *Douglass* v. *Tousey*, 2 *Wend.* 352. *Keeler* v. *Fireman's Insurance Company*, 3 *Hill* 251. Ex parte *Bailey*, 2 *Cowen*, 479. *Astor* v. *Union Insurance Company*, 7 *Cowen*, 202.

4. That in an action for a libel or slander, a new trial will not be granted, on the ground of excessive damages, unless they are so flagrantly excessive, as to show, that the jury have been actuated by passion, partiality, or prejudice. *Clark* v. *Binney*, 2 *Pick.* 113. *Moody* v. *Baker*, 5 *Cowen*, 351. *Shute* v. *Barrett*, 7 *Pick.* 82. 86. *Douglass* v. *Tousey*, 2 *Wend.* 352. *Coffin* v. *Coffin*, 4 *Mass. R.* 1.

CHURCH, Ch. J. 1. The motion in arrest of the judgment in this case, we think, must be overruled.

We differ in opinion whether the misconduct of the juror, asserted in the motion, was of that character and aggravation as should be adjudged a sufficient ground for a new trial. That it was a violation of the juror's oath, and for other reasons, highly censurable, we believe. However this may be, we unite in the opinion, that the motion in arrest is insufficient, because it does not aver, that the defendant was ignorant of the misconduct of the juror while the cause was on trial before the jury. In the case of *Pettibone* v. *Phelps*, 13 *Conn. R.* 445. we decided, that such an averment was necessary, although the cause of exception to the verdict, did not exist before the jury was empanneled, but arose during the trial, as in this case. By that decision we are governed.

2. The motion for a new trial, on the ground that the verdict is against the evidence, and that the damages are excessive, has suggested difficulties; and we are sorry to say, in regard to it, that our opinions are not unanimous.

We know how difficult it is to understand the real truth, and the exact merits of a case, from a written report of it alone. The true character and force of verbal evidence, can

only be known and felt, by seeing a witness on the stand, and hearing his testimony as given by himself. This truth will always suggest a caution to courts, when they are called upon to arrest a verdict, and grant a new trial, because such verdict is against evidence, and especially in a case like this, in which many witnesses have testified, and some of them probably under the influence of prejudices, or strong feeling, or conflicting interests, which cannot be detected in a written statement of the case.

Upon a careful examination of the testimony, as we have read it, and an application of it to the several averments and innuendoes in the declaration, a majority of us are of opinion, that the verdict has correctly determined the issue.

Most of the words alleged to have been spoken by the defendant, are such as charge the plaintiff with being a swindler, a cheat, and impute to him general dishonesty. These charges, we think, are very well justified by the proof in the case ; and if no more than these had been the import of any of the words, a verdict for the plaintiff should not be sustained. But other words were spoken, and a more serious charge was made.

*Harris Griswold* testified, that the defendant asked him, if the plaintiff was going into partnership with him in farming ? He said, " You had better look out for him, as he will cheat you, if he can.   He has swindled me out of two thousand dollars, clean cash, and he is a *damned thief*, and I am going to show him up."   I asked the defendant, if he could prove it, and he said, " I will, if I have to *rake hell* for it."   Here is a strong and unexplained charge of theft—a felony ; and no fact or circumstance was stated or alluded to, by the speaker, from which the witness could infer any thing less than a positive charge of theft.   This being so, the plaintiff had a right to claim a verdict in his favour, unless the defendant had proved this charge to be true.   We think the defendant failed to justify, in this part of his defence.

The only evidence, as we suppose, upon which the defendant relied to prove the plaintiff to have been guilty of the crime of theft, is, that derived from the testimony of *Stiles D. Sperry* and *L. W. Sperry*.   The plaintiff had been a clerk in their store, before his connexion in business with the defendant.   The *Sperrys* had suspected the plaintiff of purloining

small sums of money from the change drawer in the store, and yet they retained him in their service. On a certain occasion a three dollar bank bill, marked, was missed from the drawer, and if it was taken improperly by any body, it was in the day time, when the store was open, and the resort of numerous customers. Whether this bank bill was taken by the plaintiff, or was paid out in the course of business, or was purloined by a stranger, these witnesses did not know. Nothing was said to the plaintiff on the subject, and no opportunity of explanation was given to him. This evidence, we think, falls quite short of proving a theft—it hardly justifies a reasonable suspicion of theft.

3. The plaintiff was therefore entitled to recover damages, to some extent. To determine the amount of damages, was entirely within the power and province of the jury. They assessed them at eight hundred dollars; and it is now claimed that they are excessive.

That the defendant had just occasion for believing the plaintiff to be a very dishonest man, we have already said; and therefore, we regret that the jury should have considered him as deserving so large a sum of damages. But, when called upon to interfere with the differing estimate of the jury, we ought to be able to point to something definite of which we can speak, before we disregard their verdict. It has been said, that verdicts in actions of slander and libel, have never been set aside for excessive damages. We have not looked through the history of the law of these actions to see if this be so. We do not know why they should furnish an exception to the exercise of a power over verdicts, which has been recognized in all other cases. We admit, that where damages are merely discretionary, courts, on the trial of causes, should not interfere, either to enhance or reduce them, without very obvious reasons; and such reasons frequently exist. If the disproportion between the injury and the damages be so great as to indicate passion, prejudice, or corruption of the jury—if by mistake or otherwise, the jury have been misled by irrelevant matter, or have disregarded or misapprehended some rule of law; and thus have made an extravagant assessment of damages; in such cases, as well as others which may well be conceived, it would be the duty of the court to put

*Hartford,*
August, 1850.

Woodruff
*v.*
Richardson.

its hand upon the injustice.   But we have no such reasons, in the present case.

This cause, as appears from the record, had been long pending in court ; the expenses incurred by the plaintiff had been unusually great ; and much of the sum allowed as damages, will be required to pay them.   If the jury intended an indemnity to the plaintiff, they have not greatly erred.   And so, if they believed that the defendant had been unnecessarily severe in his charges against the plaintiff, and had proceeded beyond the reasonable limits of just complaint, impelled by motives of revenge, they might well enough think of this, in fixing the amount of damages.

Another consideration has had weight with us.   The jury, upon the first consideration of the case, assessed the plaintiff's damages at eleven hundred dollars.   From this, the judge at the circuit entirely dissented, and returned them to a second consideration.   In doing this, he expressed his own views, and urged reasons upon the jury against so large an amount of damages.   In their final action upon the case, we must suppose, the jury acted under the influence of such views and reasons as the court had suggested.   They must have considered the case calmly, and the result was, a verdict for eight hundred dollars.   After this, we ought to hesitate much before we consent to disturb a verdict thus deliberately and dispassionately rendered ; and a majority of the court do not think themselves justified in doing it, and therefore, cannot consent to grant a new trial, for any of the causes alleged.

In this opinion, STORRS and HINMAN, Js. concurred.

WAITE and ELLSWORTH, Js. were of opinion, that the evidence detailed in the motion, if it did not entirely justify the speaking of the words, showed the conduct of the plaintiff to have been such as to preclude him from recovering any thing more than mere nominal damages.

New trial not to be granted.